Ex Parte Arthur Stallcups.

No. 5727. Decided April 7, 1920.

**1.—City Charter and Ordinance—Service Car—Habeas Corpus.**

Where, the City of Houston had abolished the stands for parking automobiles and so amended the ordinances, limiting the number of stands, but providing that the auto or vehicle carrying passengers could stop along the streets and take on or discharge passengers without limitation as to territory, and relator was arrested for having his car stationed or parked at one of the stands designated in one of the former ordinances, held that the same was a reasonable regulation and defendant was finable.

**2.—Same—Reasonable Regulation—Police Power.**

What may be reasonable has been the subject of a great deal of litigation, legislation, and judicial construction, but relator not having shown that the abolition of the stand he subsequently occupied is unreasonable, or that it in any way worked a hardship upon him, the court must assume that the ordinance was reasonable. Following Green v. San Antonio, 178 S. W. Rep., 6, and other cases, and the writ for *habeas corpus* is dismissed.

From Harris County.

Original habeas corpus proceedings, asking release from arrest for violating a city ordinance with reference to parking automobiles.

The opinion states the case.

*Tunley & Clark* for relator.

*Homer Stephenson,* Attorney for City of Houston.—Cited cases in opinion.

*Alvin M. Owsley,* Assistant Attorney General for the State.

DAVIDSON, Presiding Judge.—This is an original application for a writ of *habeas corpus,* which was set down for submission and duly submitted for hearing.

The agreed statement of facts shows that the applicant was convicted of violating a city ordinance of the city of Houston for stopping his rent car upon the streets of Houston. He entered a plea of guilty in each of two cases and was fined five dollars. At the time he was arrested in the cases his car was stationed at one of the stands

mentioned in a former ordinance, but which stand had been abolished by a subsequent ordinance mentioned in the application for writ of *habeas corpus.* From this state of facts it seems there had been a previous ordinance designating certain points on streets in Houston where autos could take their stand in taking on and discharging passengers. The later ordinance limited the number of stands, but provided that the auto or vehicle carrying passengers could stop along the streets and take on or discharge passenger. This seems to have been practically without limitation as to territory. Applicant, under this state of facts, was arrested for having his car stationed at one of the stands designated in the former ordinance which was abolished by the later ordinance.

We are of opinion that applicant could not claim the right to take his stand at the particular place, or that the city was without power to abolish that particular stand and pass other ordinances controlling and regulating vehicles which carry passengers. He was not charged with loitering along the streets under the new ordinance, but was charged with taking his stand at a place formerly authorized but later abolished. It seems from the special charter that the city of Houston was granted rather extensive powers in regard to controlling and regulating the streets of that city and the traffic along them. In a general way it may be stated correctly that the Legislature has power to grant cities special charters and clothe them with authority to carry out the purposes of the charter, provided, however, that the power granted shall not violate any provisions of the Constitution, nor shall there be any derogation of any general law of the State, and also that they must be reasonable and not arbitrary and oppressive. The streets, of course, are controlled and under the supervision of the city for the benefit of its inhabitants. Those who live within the corporate limits have a right to carry on business in a legitimate way, and unless the ordinance violates some of the guaranteed rights of the citizenship, or some law of the State, it would not be subject to be held unreasonable or arbitrary. The people to be affected may carry on or pursue any legitimate business or calling subject to the restrictions above mentioned, and to reasonable regulations. What may be reasonable has been the subject of a great deal of litigation and legislation as well as judicial construction, but it occurs to us that the applicant has not shown that the abolition of the stand he subsequently occupied is unreasonable, or that it in any way worked a hardship upon him. Why the city council abrogated that particular stand is not shown, nor has it been shown that it was without the power of the city council legitimately exercised. The creation of stands of this character and their abolition is largely discretionary with the city council. What may operate at one time to create the stand may be not proper at another time. The sollution of these matters is largely within the discretion of the city council and in order to show their unreasonableness facts must be adduced. In a general

way it may be stated that the authorities hold that such ordinances are within the power of the city council and the authority conferred upon the governing body of the municipal corporation, and unless, it violates the Constitution or the general law of the land as enacted by the legislature, or is unreasonable and arbitrary, they will be upheld. Green v. San Antonio, 178 S. W. Rep., .6; Booth v. Dallas, 179 S. W. Rep., 301; Auto Transit Co. v. Ft. Worth, 182 S. W. Rep., 685; Peters v. San Antonio, 195 S. W. Rep., 989; Craddock v. San Antonio, 198 S. W. Rep. 634; Dallas v. Gill, 190 S. W. Rep., 1144; Ex parte Parr, 82 Texas Crim. Rep., 525, 200 S. W. Rep., 404.

. Nothing being shown by this record to sustain the contention of applicant, we are of opinion that the writ of habeas corpus should not be granted, and it is, therefore, dismissed.

*Dismissed.*